**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**ZACHARY ALLEN MARTIN,**

    Plaintiff,

                          **CIVIL ACTION NO.   3:11cv654**

**Q & A ENTERPRISES, INC., t/a
GLOBAL SELECT AUTO,** *et al.,*

    Defendants.

**PLAINTIFF'S REPLY TO CHASE FINANCE AND CRESCENT BANK'S MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**Introduction**

Two defendants have filed memoranda supporting their Motions To Dismiss containing arguments and case citations that are virtually identical.   In the interest of keeping legal fees as low as possible, this memorandum addresses both Motions To Dismiss within the same pleading.

**Pertinent Facts and Allegations in the Complaint**

The Defendants in this case are J. P. Morgan Chase Bank, N.A., t/a Chase Custom Finance ("Chase Finance"), Crescent-Virginia Loan Production, Inc., t/a Crescent Bank and Trust, ("Crescent Bank"), and Consumer Portfolio Services, Inc. ("CPS").  The facts presented in Chase Finance and Crescent Bank's memoranda in support of their Motions to Dismiss omit critical facts alleged in the Amended Complaint and incorrectly argues that whether credit was offered to the Plaintiff by the car dealer, Global, is uncontested. The following additional facts are relevant:

    1.      On April 30, 2011 Plaintiff had a conversation with the finance manager, Danny Price, regarding the new purchase documents Global (the car dealership) wanted him to sign.   Mr.

1

Price told Plaintiff that the real reason Global needed the second batch of documents signed was that <u>his loan had not gone through</u> and that if he did not sign the second batch of documents that the deal was cancelled and he had to bring the vehicle back. When Plaintiff informed him that he did not intend to sign the second batch of documents, Mr. Price told him the deal was cancelled and to return the vehicle on Monday, May 2, 2011.  (Amended Complaint ¶ 33).   (Thus no credit was offered by any of the creditors.)

      2.    Since Global had advised him that the sale was being cancelled, Plaintiff began the process of stopping payment on his $1,000.00 check and even called the alleged assignee of the RISC, Wells Fargo Dealer Services (Wells Fargo), which informed him that it had no record of a vehicle loan in his name. (Amended Complaint ¶ 36).

      3.    On Sunday, May 1, 2011 Plaintiff returned a call from Alex about the $1,000.00 down payment, who advised him that the finance manager, Danny Price, had said the deal had been cancelled and that he could bring the vehicle back on Monday, to which the Plaintiff agreed. (Amended Complaint ¶ 37).

      4.    On Monday, May 2, 2011 Plaintiff returned the vehicle as requested, but Global stated that it did not intend to cancel the deal or return his down payment, that since he had not brought in the remaining $1,000.00 in cash owed towards the down payment it was repossessing the vehicle, and that it did not care what Wells Fargo said about the loan because "Global is the bank" and to leave the vehicle on the lot because "you're wasting your time and mine." (Amended Complaint ¶ 38).

      5.    In Counts Three and Four of the Amended Complaint, Plaintiff alleges, *inter alia,* that Global violated the Virginia Consumer Protection Act by its use of deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction   and

committed fraud by stating that <u>financing was approved when it had not been</u>. (Amended Complaint ¶ 59).

6. Defendants never provided Plaintiff notice that his application for credit for the purchase of the vehicle in question had been approved or denied. (Amended Complaint ¶¶ 17, 18 and 46).

## Standard of Review

Under 12(b)(6) of the Rules of Federal Civil Procedure, Defendants' Motions to Dismiss can only be granted if there is no set of facts that would entitle Plaintiff to a verdict on the claims at issue. To file its Motion to Dismiss, Defendants must accept the facts alleged in the Amended Complaint as true. See <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974); <u>Puerto Rico ex. rel. Ouiros v. Alfred L. Snapp & Sons</u>, 632 F.2d 365 (4th Cir. 1980). Furthermore, all reasonable inferences must be made in favor of Plaintiffs. See <u>Johnson v. Mueller</u>, 415 F.2d 354 (4th Cir. 1969); <u>MacKethan v. Peat. Marwick. Mitchell & Co.</u>, 439 F. Supp. 1090 (E.D. Va. 1977). No count can be dismissed unless it appears beyond a doubt that Plaintiff cannot recover under any set of facts which could be proven. See <u>Doby v. Safeway Stores. Inc.</u>, 523 F. Supp. 1162 (E. D. Va. 1981); <u>Austin v. Reynolds Metals Co.</u>, 327 F. Supp. 1145 (E. D. Va. 1970). Because Plaintiff's claims for violations of the ECOA are properly supported, the Motion to Dismiss must be denied.

## ARGUMENT

I. THE MOTION TO DISMISS PLAINTIFF'S EQUAL CREDIT OPPORTUNITY ACT (ECOA) CLAIM MUST BE DENIED BECAUSE DEFENDANTS CANNOT IGNORE THE FACTS ALLEGED AGAINST THEM WHICH INDICATE A VIOLATION OF THE ECOA.

    A. <u>The ECOA claims against the Defendants that they failed to provide Plaintiff notice of the action taken on his credit application should not be dismissed since it is unclear whether credit was actually offered by the car dealer or used by the Plaintiff.</u>

A credit application is defined in Regulation B as "an oral or written request for an extension of credit that is made in accordance with procedures used by the creditor for the type of credit requested." Reg. B, 12 C.F.R. § 202.2(f).

Often a potential buyer of a vehicle will require a purchase money loan. In many cases, the dealer will be the initial creditor noted on the Retail Installment Sales Contract (RISC), such as Exhibit 3 to the Amended Complaint, and will attempt to assign the loan to a third party creditor. In many cases, such as the case at bar, the car dealer simultaneously submits the buyer's credit application to several creditors to ensure credit will be obtained by one of them and to find which creditors that approve the application will provide it the most profit to the dealer on the financing. The car dealer then picks one of the creditors that approves the loan and provides it the most profit on the financing, and offers these terms to the buyer.[1]

The ECOA requires that within thirty days of receiving a completed application, a creditor must notify an applicant of actions taken concerning the creditor's approval of, counteroffer to, or adverse action of the application. Reg. B, 12 C.F.R. §202.9(a)(1)(i). This notification may be

---

1 The "profit" on the assigned finance contract is obtained when the potential assignee creditor offers the buyer credit at an interest rate that is not fixed, but is a spread of usually three percentage points so that the loan could be written at an interest rate between the spread. . E.g. the loan request may be approved with the assignee/lender advising the dealer that it will provide financing at an interest rate from 9% up to 12%. This 3% point spread is called the "yield spread". And anything over 9% that the dealer can get the buyer to agree to is usually split between the dealer and creditor. Thus the greater the spread the creditor will offer the dealer, the more money it can make if it can get the buyer to somehow agree to that high interest rate. The dealer will try to get the buyer to agree to the offer of credit from this particular creditor at as high an interest as it can get the buyer will agree to.  *See* <u>Watson v. CBSK Fin. Group, Inc.</u>, 2002 U.S. Dist. LEXIS 6872 (N.D. Ill. April 17, 2002); <u>Moses v. Citicorp Mortgage, Inc.</u>, 982 F. Supp 896 (E.D.N.Y. 1997); <u>Besta v. Beneficial Loan Co.</u>, 855 F. 2d 532 (8th Cir. 1988)

either express or by implication. For example, implicit notification is given when the applicant receives a credit card, money, property, or other requested services. Official Staff Commentary to Reg. B, 12 C.F.R. § 202.9(a)(1)-2.

If the credit applicant expressly accepts or uses credit offered by one creditor in connection with an application to multiple creditors submitted through a third party, like a car dealer, no notice of approval or adverse action need be provided by any other creditor that may have approved, or rejected the application. Reg. B, 12 C.F.R. § 202.9(g); *see also* Thompson v. Galles Chevrolet Co., 807 F. 2d 163 (10th Cir. 1986).

Chase Finance and Crescent Bank argue that since credit was offered by Global in this case no notice of approval or adverse action from them needed to be made pursuant to the exemption in the ECOA found in Reg. B, 12 C.F.R. § 202.9(g). The argument that the Amended Complaint conclusively states that credit was offered by the car dealer, Global, and accepted by the Plaintiff is simply not true.  A complete reading of the Amended Complaint make it clear that it is unknown whether credit was actually offered to the Plaintiff by Global or whether the RISC was actually assigned to Wells Fargo. Paragraph 23 does state that Global accepted the loan and told the Plaintiff his loan had been approved, but paragraphs 33 and 59 of the Amended Complaint make it clear that after telling the Plaintiff his loan had been approved, Global reversed itself and informed Plaintiff that "his loan had not gone through," even though it originally represented that his "financing was approved when it had not been." To confuse matters even more, as noted in paragraph 38, when the vehicle was returned by the Plaintiff at the request of the Global since Plaintiff's loan had not gone through and it was cancelling the deal, Global refused to return the $4000 partial down payment claiming that it was not cancelling the deal and would not return the down payment since it claimed Plaintiff had failed to pay the remaining $1000 he owed for his

down payment.[2]   Global has simply taken contradictory positions with the Plaintiff about whether it approved his credit application and it is unknown whether Global was lying when it told him his loan had been approved (Amended Complaint ¶23), or was lying when it later said his loan "had not gone through". (Amended Complaint ¶33).   Only the discovery process will shed light on this issue.

From the allegations in the Amended Complaint it is reasonable to infer that this case is a typical Yo Yo transaction as described in the "Introduction" to the Amended Complaint.   Global initially misrepresented that Plaintiff's loan had been approved, but then never provided that credit since it later chose not to do so and yank the car back when Plaintiff refused to sign the second batch of purchase contracts, as noted in paragraph 33 of the Amended Complaint. Discovery may confirm that no credit was ever actually provided to satisfy the condition requiring financing that is part of the purchase contract noted in the terms on the back of the Buyer's Order (Exhibit 2 to the Complaint).[3]   The exemption provided by Reg. B, 12 C.F.R. § 202.9(g) cannot be applied to the Defendants at this time since it is unknown whether credit was ever actually offered by Global and accepted by the Plaintiff.

> A. <u>Even if it is Global's fault for the improper notice of the action taken on Plaintiff's credit application, Defendants depended this third party to provide the proper notice of the action taken, and to avoid liability under the ECOA they must prove they maintained reasonable procedures adopted to prevent such violations.</u>

---

2  As noted in ¶ 36 the Amended Complaint, Plaintiff stopped payment on the $1000 check since he was told by the dealer that his loan had not gone through, that the deal was being cancelled, and that he had to return the car.
3  The only copy of the Buyer's Order that Plaintiff was provided is blank on the back and this is the only copy counsel for Plaintiff has.   A request has been made to Global's lawyer for a complete copy but none has been provided to date.   Based on counsel for Plaintiff's experience, it is believed a complete copy will reveal a Buyer's Order and RISC that is conditional on obtaining financing for the purchase of the vehicle.

If Defendants defend the alleged violation of the ECOA by attempting to shift the blame to the car dealer for failing to provide the proper notice to the Plaintiff, such an argument should fail. It is the creditor's responsibility to make sure that the ECOA notices are properly communicated to the credit applicant. If it depends on a third party, such as the car dealer in the case at bar, to provide the required notices of the action taken regarding a credit application, it must prove that it maintained reasonable procedures adopted to prevent such violations. Official Staff Commentary to Reg. B, 12 C.F.R. § 202.9(g)(3). Whether Defendants maintained reasonable procedures to prevent the violations alleged in this case is a question of fact that cannot be answered at this time and will require use of the discovery process to shed light on the answer.

### B. THE FAIR CREDIT REPORTING ACT CLAIM MAY BE RESOLVED IN FAVOR OF THE DEFENDANTS

The claims under the Fair Credit Reporting Act (FCRA) against the Defendants were based on the understanding that the FACTA amendments did not prohibit a private claim under the FCRA as determined by the Court in the case of Barnette v. Brook Road, Inc., 429 F. Supp 2d 741 (E.D. Va. 2006), in which counsel for Plaintiff was co-counsel. However, in view of this Court's recent decision in Bourdelais v. J.P. Morgan Chase Bank, N.A. , 2011 U.S. Dist. LEXIS 35507 (E.D Va. April 1, 2011), which disagrees with the Barnette court's holding on this issue, Plaintiff agrees to sign an order from defense counsel dismissing this count of the lawsuit.

## CONCLUSION

For the reasons stated above, the Motions to Dismiss should be denied for the claims made under the ECOA and granted for those made under the FCRA.

**ZACHARY ALLEN MARTIN,**

By: /s/ John Cole Gayle, Jr.

John Cole Gayle, Jr.
Virginia State Bar #18833
The Consumer Law Group, P.C.
Of counsel to Plaintiff
5905 West Broad Street, Suite 303
Richmond Virginia 23230
804 282-7900
804 673-0316 Fax
jgayle@theconsumerlawgroup.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2012, a copy of the foregoing was sent by ECF to:

Robert D. Perrow, Esquire
J. P. McGuire Boyd, Jr., Esquire
WILLIAMS MULLEN
200 South 10th Street
Suite 1600
Richmond, VA 23219

Counsel for Crescent-Virginia Loan Production, Inc., t/a Crescent Bank and Trust
And

Sung B. Yhim, Esquire
McGuire Woods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD 21202

And

Kenneth W. Abrams, Esquire
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, VA   23219

    Counsel for J. P. Morgan Chase Bank, N.A., t/a Chase Custom Finance

And Mailed To:

CT Corporation System
Registered Agent
4701 Cox Road, Suite 301
Glen Allen, VA   23060-6802

    Registered Agent for Consumer Portfolio Services, Inc.

    By: /s/ John Cole Gayle, Jr.
John Cole Gayle, Jr.
Virginia State Bar #18833
The Consumer Law Group, P.C.
Of counsel to Plaintiff
5905 West Broad Street, Suite 303
Richmond Virginia   23230
804 282-7900
804 673-0316 Fax
jgayle@theconsumerlawgroup.com