IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ZACHARY ALLEN MARTIN, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:11CV654—HEH
)
Q&A ENTERPRISES, INC., t/a )
GLOBAL SELECT AUTO, *et al.*, )
)
    Defendants. )

<u>MEMORANDUM OPINION</u>
(Granting in Part and Denying in Part Defendants' Motions to Dismiss)

This action arises from the sale and financing of a used vehicle by an automotive dealership. It is presently before the Court on two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure—one filed by Defendant Crescent-Virginia Loan Production, Inc. ("Crescent"), and the other by Defendant JPMorgan Chase Bank, N.A. ("Chase"). For the reasons set forth herein, the motions will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff's First Amended Complaint (the "Complaint") contains the following factual allegations. On April 20, 2011, Plaintiff Zachary Allen Martin ("Plaintiff" or "Martin") submitted an online credit application to Defendant Q&A Enterprises, Inc., t/a Global Select Auto ("Global"), a car dealership, in order to purchase a 2004 Porsche Cayenne. That same day, Global conducted a credit inquiry and notified Martin that he qualified for financing.

1

In an effort to assign Martin's prospective loan, Global used Dealer Track, an online interface, to circulate applications on Martin's behalf to various finance companies, including Defendants Crescent, Chase, and Consumer Portfolio Services, Inc. ("CPS"). Plaintiff alleges that each submission complied "with the procedures used by the [respective] creditor for the type of credit requested." (Pl.'s Am. Compl. at ¶ 14.) Two lenders responded favorably. Upon review of Martin's personal information, Chase indicated that it would provide financing at an interest rate between 9.75% and 12.25%. (*Id.* at ¶ 15.) CPS also approved the application. However, neither company directly notified Plaintiff of their actions. (*Id.* at ¶ 17.) Aside from soliciting offers, it does not appear that Global was directly involved in setting the terms of any lender's proposed financing package.

Martin went to the dealership on April 23, 2011 to finalize his purchase. After negotiating with a Global representative, he agreed to make a $5000.00 down payment in exchange for a reduced purchase price of $18,500.00. Once again, Global advised Martin that his loan had been approved. (*Id.* at ¶ 19.) Hours later, however, Plaintiff was informed that a rate of 12.49% was the "best" financing Global could obtain, yielding a total cost of $24,765.70. (*Id.* at ¶ 21.) Plaintiff alleges that "Global intentionally concealed" the fact that his "car purchase and loan request had been approved by lenders on terms lower than what was presented to him." (*Id.* at ¶ 25.) He further claims that "[t]he [lender] Defendants did not approve [his] request for credit on the terms [originally proposed by Global] after making credit inquiries into [his] credit report on April 21, 2011, but never provided [him] written notice of this adverse action." (*Id.* at 18.)

2

Martin signed various documents pertaining to the sale of the car. In addition to a Buyer's Order reflecting his unpaid balance (*id.* Ex. 2.), Martin executed a Retail Installment Sales Contract (RISC) setting forth financing terms. Neither document explicitly conditioned the sale of the vehicle upon receipt of financing from a third-party lender, and a box on the face of the Buyer's Order asking whether the "transaction involves dealer-arranged financing" appears unmarked. (*Id.*) Plaintiff alleges, however, that the Buyer's Order should have included a notice of conditional dealer-arranged financing, as required by Va. Code. Ann. § 46.2-1530. (*Id.* at ¶ 22.)

Nor did either form expressly state whether Global itself intended to finance the sale. However, the contract identified Global as the "Creditor-Seller" and provided that Martin would be required "to pay the Creditor-Seller ... the Amount Financed and Finance Charge in U.S. funds according to the payment schedule" set forth therein. The RISC also notified Martin of Global's right to assignment, and in fact indicated that Global had assigned its interest "without recourse" to Wells Fargo Dealer Services ("Wells Fargo"). (*Id.* Ex. 3.) After completing the requisite paperwork and providing Global with proof of insurance, Martin left the dealership in possession of the vehicle.

One week later, Martin received a phone call from Global's finance manager informing him "that his loan had not gone through," and that the sale would be cancelled unless he agreed to sign a "second batch of backdated purchase documents." (*Id.* at ¶¶ 32-33.) Plaintiff alleges that, contrary to the finance manager's assurances, the later RISC listed a higher purchase price than the one he originally signed on April 23. (*Id.* at ¶ 34.) It also contained the following caveat, which did not appear in the first RISC:

3

> If you are financing this vehicle, please read this notice. You are proposing to enter into a Retail Installment Sales Contract with the dealer. Part of your contract involves financing the purchase of your vehicle. If you are financing this vehicle and the dealer intends to transfer your financing to a finance provider such as a bank, credit union or other lender, your vehicle purchase depends on the finance provider's approval of your proposed [RISC]. If your [RISC] is approved without a change that increases the cost or risk to you or the dealer, your purchase cannot be cancelled. If your [RISC] is not approved, the dealer will notify you verbally or in writing. You can then decide to pay for the vehicle in some other way or you or the dealer can cancel your purchase....

(*Id.* Ex. 4, at 3.) However, the revised materials again listed Wells Fargo as "the [a]ssignee ... under the terms of a separate agreement," and indicated that no "conditional delivery" provision was incorporated into the contract of sale. Martin refused to execute the new set of documents, and immediately stopped payment on the check tendered as part of his down payment. He also contacted Wells Fargo, as the purported assignee of both his original and revised RISC, but was surprised to learn that the bank "had no record of a vehicle loan in his name." (*Id.* at ¶ 36.)

Initially, Global demanded that Martin return the car. But when he attempted to do so on May 2, 2011, Global allegedly retracted its cancellation of their agreement. A manager at the dealership further advised Martin that "he did not care what Wells Fargo said about the loan because 'Global is the bank.'" (*Id.* at ¶ 38.) As Martin had not yet tendered his full down payment in cash, Global repossessed the Porsche.

Based on the foregoing facts, Martin filed suit in this Court on September 30, 2011. Only Counts One and Two of his Complaint are now at issue. In Count One, Plaintiff asserts that Defendants Global, Crescent, Chase, and CPS violated their duty as "creditors" under the Equal Credit Opportunity Act (the "ECOA" or "the Act"), 15 U.S.C. §§ 1691 *et seq.*, to provide notice of their approval or denial of his credit application. Count Two

alleges that, in failing to advise him of their actions, Defendants also violated the Fair Credit Reporting Act, 15 U.S.C. § 1691m. Plaintiff seeks actual and punitive damages as permitted by statute.

Defendants Chase and Crescent filed the present motions on January 6, 2012.[1] Based on the arguments contained therein, and in light of this Court's decision in *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 35507, *21 (E.D. Va. April 1, 2011), Plaintiff has agreed to voluntary dismissal of Count Two. (Pl.'s Mems. Opp. 7, ECF Nos. 30-31.) Defendants' motions as to Count One are now ripe for decision.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and

---

[1] Defendant CPS has not answered or otherwise responded. Pursuant to an agreement between the parties, this Court entered an Order on November 14, 2011 (ECF No. 18) referring Plaintiff's claims against Global to arbitration, and staying all other proceedings as to those claims.

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

### III. ANALYSIS

One of the "most significant" elements of the ECOA is the duty it imposes upon creditors to furnish applicants with a written "statement of reasons" for any "adverse action" taken, including a refusal to grant credit substantially as requested by the applicant.[2] 15

---

[2] The purpose of the ECOA's notification requirement is threefold. First, Congress intended for it to serve as "a strong and necessary adjunct to the antidiscrimination purpose" of the statute, "for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices." S. Rep. No. 94-589, at 3. In addition, the explanation required under the Act provides applicants with a "valuable educational benefit," because it allows them "to learn where and how their credit status is deficient." *Id.* And in instances where a creditor's actions may have been premised on misinformation, "the statement of reasons gives the applicant a chance to rectify the mistake." *Id.*

U.S.C. § 1691(d)(2); S. Rep. No. 94-589, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 403, 409. Although it must contain "specific reasons" for the creditor's conduct, 15 U.S.C. § 1691(d)(2), the notification need not be extensive; "a short, check-list statement" may be sufficient. *O'Dowd v. S. Cent. Bell*, 729 F.2d 347, 352 (5th Cir. 1984) (quoting S. Rep. No. 94-589, at 8). Creditors are also required to advise applicants of non-adverse actions, although such notices need not include a statement of reasons. 15 U.S.C. § 1691(d)(1). An aggrieved applicant may bring a civil action against "any creditor who fails to comply" with the Act's mandates. *Id.* § 1691e.

Importantly, where a third party, such as Global, circulates an application to multiple creditors on an applicant's behalf "and the applicant *expressly accepts or uses credit offered by one of the creditors*, notification of action taken by any of the other creditors is not required." 12 C.F.R. § 202.9(g) (emphasis added).[3] Thus, an applicant's acceptance of one lender's offer of credit relieves other lenders of their notice obligation.[4] However, this exception is limited in scope: "If no credit is offered or if the applicant does not expressly

---

[3] Congress has delegated to the Board of Governors of the Federal Reserve System the authority to promulgate regulations implementing the ECOA. 15 U.S.C. § 1691b(a). Those enactments, known as "Regulation B," are codified at 12 C.F.R. § 202 *et seq.*

[4] Another exception to the notice-of-adverse-action rule provides that "[w]here a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by [the Act] may be made directly by such creditor, *or indirectly through the third party*, provided in either case that the identity of the creditor is disclosed." 15 U.S.C. § 1691(d)(4) (emphasis added). In such instances, a single statement as to multiple creditors may suffice, so long as it "contain[s] the name and address of each creditor" and "clearly indicat[es] which reasons relate to which creditor." 12 C.F.R. pt. 202, Supp. I, at ¶ 9(g)(1). Moreover, creditors that arrange to provide indirect notice vis-à-vis an intermediary will not be "liable for an act or omission of the third party that constitutes a violation of the regulation," provided that "the creditor [(1)] accurately and in a timely manner provided the third party with the information necessary for the notification and [(2)] maintains reasonable procedures adapted to prevent such violations." *Id.* at ¶ 9(g)(3). Here, there is no indication that Crescent or Chase asked Global to furnish notice on their behalf, or that Global in fact did so.

7

accept or use the credit offered, each creditor taking adverse action must comply with [the notification requirement], directly or through a third party." *Id.*

In this case, Crescent and Chase concede that Plaintiff has sufficiently alleged their failure to advise him in the first instance of their decisions not to provide financing as requested.[5] They argue, however, that their lack of communication was legally excused. Specifically, they maintain that the facts laid out in the Complaint reveal that Global or Wells Fargo extended,[6] and Plaintiff expressly accepted, an offer of credit, such that—as a matter of law— "no other creditor ... was required to send an adverse action notice under the ECOA." (Def. Crescent's Mem. Supp. 1-2; *see also* Def. Chase's Mem. Supp. 5-7.) In other words, they assert that their failure to furnish notification, even if proven, is not actionable under the ECOA because their duty to notify dissipated upon Martin's acceptance of financing from another lender.

Although Plaintiff accepts the contours of this notice exception (*see* Pl.'s Mems. Opp. at 5), he disputes its applicability to the facts of this case. More precisely, he contends that "[a] complete reading of the Amended Complaint make[s] it clear that it is unknown whether credit was *actually* offered to the Plaintiff by Global or whether the RISC was *actually* assigned to Wells Fargo." (*Id.* (emphasis added).) Thus, Plaintiff argues that the facts, as plead, reasonably suggest that he never *in fact* accepted an extension of credit,

---

[5] Even if Chase initially accepted Plaintiff's application, it was nonetheless obligated to communicate that decision, 15 U.S.C. § 1691(d)(1), and to provide a statement of reasons if it offered terms substantially different from those requested, *id.* § 1691(d)(2).

[6] Crescent and Chase disagree somewhat on this point. Crescent construes the Complaint as alleging that "Martin accepted credit terms offered by Global in the RISC." (Def. Crescent's Mem. Supp. at 4-5.) Chase, on the other hand, views "Plaintiff's RISC [as] evidence that he accepted financing by Wells Fargo." (Def. Chase's Mem. Supp. at 5.) In any event, both parties argue that Martin's acceptance of another creditor's offer relieved them of their respective duty to justify their denial of his application.

8

because no *genuine* financing offer is alleged to have been made. Having considered Plaintiff's allegations as to both Global and Wells Fargo, the Court agrees.

Contrary to Crescent's contention, the Complaint does not clearly show that Martin "expressly accepted" financing from Global. Automobile dealers such as Global frequently offer to coordinate financing on a customer's behalf. In submitting the buyer's application to banks, the dealer acts merely as "an 'arranger' or 'referrer' with regard to credit." *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004). In rarer instances, however, the dealer may itself offer to provide a purchase loan. Crescent argues that Global acted in the latter capacity in this case. Although the evidence may later substantiate their claim, the facts alleged do not *compel* that conclusion.

Crescent's characterization of Global as "a 'participating creditor' subject to the ECOA's notice requirements," even if accurate, is somewhat misguided. (Def. Crescent's Reply 4 (quoting *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 719 (E.D. Va. 2005)).) Global may well have acted as a "creditor" within the meaning of the Act by arranging financing for Martin's vehicle purchase.[7] *See* 15 U.S.C. § 1691a(e) (defining a "creditor" for purposes of the notice mandate as "any person who regularly extends, renews or continues credit [or] ... who regularly arranges for the extension, renewal, or continuation

---

[7] There has been debate in recent years as to whether an automotive dealership may be a "creditor" subject to the notice requirements of the ECOA. *See generally Treadway*, 362 F.3d at 975-81; Note, *Dealers Take Notice: The Responsibilities of Automobile Dealerships Under Regulation B of the Equal Credit Opportunity Act*, 44 Brandeis L.J. 931 (2006). Simply put, any creditors that "regularly participate[] in a credit decision" are obligated to report their adverse actions. 12 C.F.R. § 202.2(l). But "[w]here the automobile dealer only accepts applications for credit and refers those applications to another creditor who makes the credit decisions—for example, where the dealer does not participate in setting the terms of the credit or making the credit decision—the dealer is subject only to" the ECOA's prohibitions against discrimination and discouragement, and *not* to the Act's notice-of-adverse-action provision. Equal Credit Opportunity, 68 Fed. Reg. 13,144, 13,155 (Mar. 18, 2003) (to be codified at 12 C.F.R. pt. 202).

of credit"). And as a "creditor," Global may have *shared* the same duty as Crescent and Chase to provide Martin with an account of its actions. But that's not the essential issue. Rather, the pivotal question is whether Global itself entered into a financing agreement that *displaced* the obligations of other creditors, including Crescent and Chase, to advise Martin of their decision on his application. The answer, as explained below, is not yet clear.

As Crescent aptly points out, Global appears as the "Creditor-Seller" on Martin's RISC. But that disclosure, as required by another federal statute, does not conclusively signify that Global agreed to finance Martin's loan, or even that Global acted as a "creditor" for purposes of the ECOA. *Cf. Bayard v. Behlmann Auto. Servs., Inc.*, 292 F. Supp. 2d 1181, 1185 (E.D. Mo. 2003) (considering a defendant's identification "as 'Creditor (Seller)' on the [RISC]" and finding that "this nomenclature has little bearing on the issue[]" of whether that defendant constitutes a "creditor" under the ECOA). Nor does the Court deem dispositive Global's purported self-identification as "the bank." (Pl.'s Am. Compl. at ¶ 38.) Although these allegations advance Crescent's defense, they do not foreclose an overall interpretation of the Complaint that would support Plaintiff's claims under the ECOA. That is, viewing the facts alleged in the light most favorable to Plaintiff, the Court cannot conclude at this time that Global acted as a lender in its interactions with Martin, instead of merely a third-party "arranger" or "referrer." Indeed, Plaintiff alleges that Global presented financing terms as "the best Global could *get* for him" and "the best that it *could find*"—not the best that it could *offer*. (*Id.* at ¶¶ 23, 27.)

This Court addressed a similar set of facts in *Davis v. Reg'l Acceptance Corp.*, 300 F. Supp. 2d 377 (E.D. Va. 2002). The plaintiff in *Davis* was assured by Hall, an automotive

dealer, that she would receive financing if she purchased a car. Hall then "offered, and Davis accepted, an offer of credit." *Id.* at 382. Davis signed the RISC presented to her by the dealership and left in possession of a new vehicle. The following day, Hall "contacted several banks ... in an attempt to sell the note." When none of the banks offered financing, the dealer rescinded its contract with Davis and repossessed her car. Davis then filed suit, alleging that the dealership and creditors violated the ECOA by failing to report their actions. Notably, one of the creditors, Mercury, invoked the same § 202.9(g) exception that Crescent and Chase now assert. That is, Mercury "moved to dismiss based on its theory that 'as a matter of law, Plaintiff was not entitled to any such notice' because" she had expressly accepted an offer of credit from Hall. *Id.* at 387-88. The Court found the conditions of the exception unmet.

> In rejecting the defendant-creditor's argument in *Davis*, this Court observed:
>
> Plaintiff has pled one set of facts that gives rise to two legal theories. One theory relies on an interpretation of the attendant facts to mean that Hall extended credit to Plaintiff on November 20, 2001[, the date of her purchase]. The other is that Hall did not extend an offer of credit to Plaintiff on November 20, 2001, but that Hall merely attempted, as a third party, to obtain financing on behalf of the buyer when it contacted various defendants, including Mercury. Regardless of the interpretation of the contract, the Plaintiff has alleged facts that, if true, state a claim against Mercury that are not subject to the exception described in § 202.9(g).

*Id.* at 388. The same rationale applies here. The facts alleged in the present case can be interpreted and applied to establish that on April 23, 2011, Global "wore the hat of a third party shopping around for a finance company to extend credit to the Plaintiff" and that Chase and Crescent were two of those companies. *Id.* Under that set of facts, if established, it is "irrelevant ... that [Global] may have previously extended credit ... because it is uncontested that Plaintiff did not accept or use any credit offered by any creditor contacted

11

by [Global] on behalf of Plaintiff as required on the face of the regulation." *Id.* Further, under that construction, each of the entities to which Global submitted Martin's financial information retained an obligation to advise Martin of any adverse action taken.

Chase's argument concerning Wells Fargo is equally unavailing. As Chase observes, the contracting documents attached to the Complaint clearly identify Wells Fargo as the assignee of a financing agreement between Martin and Global. Yet Plaintiff also alleges that Wells Fargo specifically *denied* having any "record of a vehicle loan in his name." (Pl.'s Am. Compl. at ¶ 36.) Chase's request that the Court resolve this apparent conflict in its favor misunderstands the Rule 12(b)(6) framework. Critically, the Court's task at this stage is not to weigh the evidence, but only to determine whether Plaintiff has alleged a plausible claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[, not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). In this case, the Court does not interpret the facts alleged necessarily to demonstrate that Martin "expressly accept[ed] or use[d] credit offered by" Wells Fargo. 12 C.F.R. § 202.9(g).

The allegations at bar do not clearly show that Chase and Crescent were excused from complying with the notice requirements of the ECOA. Rather, Plaintiff has alleged facts which, if proven, could be construed to demonstrate that Crescent and Chase violated their duty to notify Martin of their actions on his application. Defendants may well prove at the summary judgment stage that another lender did, in fact, make an offer of credit which Martin expressly accepted, or that Global otherwise assumed the duty of communicating on

their behalf. However, because Plaintiff's First Amended Complaint states a plausible cause of action under the ECOA, dismissal of Count One is inappropriate at this juncture.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be denied as to Count One and granted as to Count Two. An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/

                                    Henry E. Hudson
                                    United States District Judge

Date: Feb. 6, 2012
Richmond, VA

13